**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **R'KES STARLING**, individually and on behalf of all others similarly situated,<br><br> Plaintiff,<br><br>  v.<br><br>**HARBOR HILL CAPITAL GROUP LLC**,<br><br> Defendant. | Case No.: 1:26-cv-00001 |

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION AND BACKGROUND ........................................................................... 1

II.     LEGAL STANDARD................................................................................................. 3

III.    ARGUMENT: Starling's Section 227(c) Claims Fail Because
        He Didn't Receive Any "Telephone Calls"........................................................... 3

        A.      Section 227(c) Does Not Provide a Private Action for Text Messages...... 3

        B.      Any FCC Ruling to the Contrary is Invalid................................................. 8

IV.     CONCLUSION.......................................................................................................... 12

## I.    INTRODUCTION AND BACKGROUND

Plaintiff brings this putative class action under the Telephone Consumer Protection Act ("TCPA"). He alleges that text messages Defendant Harbor Hill Capital Group, LLC ("Harbor Hill") sent him between August and October, 2025 violated the statute's Do-Not-Call and Caller-Identification provisions. *See* Compl. ¶¶ 24, 53–69. Harbor Hill provides customized funding solutions to businesses—not consumers—helping them grow and achieve their goals. *See* https://www.harborhillcap.com/ (last visited Apr. 15, 2026). Based on those alleged text messages, Plaintiff seeks to represent three nationwide classes. *Id*. ¶ 46.

No class could be certified in this case, since Harbor Hill only contacts businesses, and only calls to residential lines are actionable under 47 U.S.C. § 227(c)(5), the provision under which both of Plaintiff's claims arise. As such, the individualized question of whether a particular recipient's number was used for personal purposes enough to qualify as "residential" under the applicable, non-exhaustive multi-factorial test is an individualized analysis that would preclude certification. *Chennette v. Porch.com, Inc.,* 50 F.4th 1217, 1225 (9th Cir. 2022) (multi-factorial test); *Payne v. Sieva Networks, Inc.*, 347 F.R.D. 224, 228 (N.D. Cal. 2024) (denying certification on defendant's affirmative motion for this reason). But this Court never needs to reach that issue.

That's because 47 U.S.C. § 227(c)(5) contains a private right of action only for a person who has received "more than one *telephone call* within any 12-month period." 47 U.S.C. § 227(c)(5) (emphasis added); *see also* Compl. ¶¶ 53–69 (citing 47 U.S.C. § 227(c)(5)). Plaintiff does not allege that Harbor Hill placed any telephone call to him; he alleges only receiving text messages. *Id.* ¶ 22, 24. That is dispositive and requires dismissal.

Following the Supreme Court's landmark decision in *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146 (2025), almost a dozen courts across the country have properly

1

recognized that "under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages." *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025); *see also Stockdale v. Skymount Prop. Grp., LLC,* 2026 WL 591842, at *2 (N.D. Ohio Mar. 3, 2026) ("[T]his Court joins several others in holding that the term 'telephone call' as used in Section 227(c)(5) of the TCPA does not encompass 'text messages.'"); *Davis v. CVS Pharmacy, Inc.,* 797 F. Supp. 3d 1270, 1275 (N.D. Fla. 2025) (granting motion to dismiss § 227(c) claims because plaintiff only alleged receiving text messages, and "because text messages are not telephone calls, he has not stated a claim."); *James v. Smarter Contact, et al.*, --- F. Supp. 3d ----, 2026 WL 879244 (M.D. Fla. Mar. 31, 2026) (granting motion to dismiss "[b]ecause Section 227(c)(5) does not apply to text messages[.]"); *Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (granting motion to dismiss, finding "the statutory text here is clear, and a text message is not a 'telephone call.'"); *Radvansky v. 1-800-FLOWERS.COM*, 2026 WL 456919, at *4 (N.D. Ga. Feb. 17, 2026) (same); *Richards v. Fashion Nova LLC*, 2026 WL 847568, at *5 (S.D. Ind. Mar. 26, 2026) (same); *Richards v. Shein Distribution Corp.*, 2026 WL 847584, at *5 (S.D. Ind. Mar. 26, 2026) (same); *Radvansky v. Kendo Holdings, Inc.*, Case No. 23-cv-00214 (N.D. Ga. Feb. 12, 2026) (same).

That conclusion follows from the statute's text, structure, and history, as well as from the Supreme Court's recent clarification in *McLaughlin* that courts must independently determine a statute's meaning rather than defer to an agency's contrary view. Section 227(c)(5) creates a private right of action only for receipt of more than one "telephone call," and the ordinary meaning of that term at the time of enactment did not encompass text messages. The surrounding provisions of § 227 reinforce that reading, because Congress used broader language elsewhere when it wished

to regulate additional forms of communication and later amended the statute to distinguish expressly between "call[s]" and "text message[s]."

Nor can any FCC interpretation alter that result. The Supreme Court has made clear that courts must exercise their own independent judgment in determining a statute's meaning and may not defer to an agency interpretation that expands the statute beyond its best reading. *See McLaughlin*, 606 U.S. at 157–59; *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400–02 (2024). The agency may issue implementing regulations, but it cannot enlarge the private cause of action Congress chose to create, and this Court must apply the statute as written.

These defects are dispositive of both claims, and the Complaint should be dismissed with prejudice.

## II.    LEGAL STANDARD

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 556). Plausibility "'asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010) (*quoting Iqbal*, 556 U.S. 662 at 678, 680). "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility'" and must be dismissed. *Id*.

## III.    ARGUMENT: Starling's Section 227(c) Claims Fail Because He Didn't Receive Any "Telephone Calls"

### A.  Section 227(c) Does Not Provide a Private Action for Text Messages

3

The section of the TCPA at issue in this case creates a private right of action for "a person who has received more than one *telephone call* within any 12-month period." 47 U.S.C. § 227(c)(5) (emphasis added). Congress did not define "telephone call" in the TCPA, but in 1991, when the statute was enacted, the term was universally understood to mean voice-based communications, as anyone alive at that time could attest. *See Perrin v. United States*, 444 U.S. 37, 42 (1979) (courts interpret statutory terms according to their "ordinary, contemporary, common meaning").

Indeed, text messaging, as a technology, did not exist at that time, and the first text message was not sent until December 1992. *See Blackstone*, 792 F. Supp. 3d at 899 (noting "[t]he world's very first text message [was] sent Dec. 3, 1992," and "was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages.") (*quoting* Alex Fitzpatrick, How Text Messages Are Being Killed and Replaced, TIME (Dec. 3, 2014), *available at* https://time.com/3612277/text-message-history-future/) (last visited Mar. 31, 2026). When Congress enacted the TCPA in 1991, the ordinary meaning of "call" was "'the act of calling on the telephone' and 'telephone' [was defined as] 'an instrument for reproducing *sounds* at a distance . . . one in which sound is converted into electrical impulses for transmission by wire." *Stockdale*, 2026 WL 591842, at *3 (*quoting Merriam-Webster New Collegiate Dictionary* (9th ed. 1990), *available at* https://archive.org/details/webstersninthne000merr/mode/2up (last visited Mar. 31, 2026)). "Thus, a text message, which does not use a telephone to reproduce sounds at a distance, is not included or embraced in the ordinary public meaning of 'telephone call' from 1991." *James*, 2026 WL 879244, at *3 (*citing* The Random House Dictionary of the English Language 297, 1952 (2d ed. 1987), and Merriam-Webster's Collegiate Dictionary 162, 1211 (10th ed. 1993)); *see also Stockdale*, 2026 WL 591842, at *3 ("Under these definitions, 'telephone

4

call' could not include modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance."); *CVS Pharmacy*, 797 F. Supp. 3d at 1273 (Recognizing it is "[c]ertainly" the case that "no ordinary person would think of a text message as a '*telephone* call' . . . at the time of the provision's enactment.").

The Supreme Court has warned against judicial efforts to retroactively "modernize" the TCPA by stretching terms beyond their original meaning. In *Facebook v. Duguid*, the Court <u>unanimously</u> reversed an expansive interpretation of the TCPA, holding that courts may not rewrite the statute to keep up with changing technology. 592 U.S. 395 (2021). The same logic applies here. If "telephone call" meant "text message," then any communication capable of being transmitted via the phone—emails, app alerts, social media notifications—could arguably fall within the statute. Congress chose not to go that far by using a term with a fixed contemporaneous meaning in Section 227(c)—instead of a *category term* like "all communications"[1]—which also contains other limitations on the private cause of action not present in other sections of the TCPA.

Numerous recent decisions confirm that conclusion and dismiss claims under § 227(c) based on text messages, finding that the statute plainly does not apply to them. In *Stockdale*, the Northern District of Ohio held that "the term 'telephone call' as used in Section 227(c)(5) of the TCPA does not encompass 'text messages,'" and explained that the plain meaning of "telephone call" at the time Congress enacted the TCPA "could not include modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance." 2026 WL 591842, at *2–4 (N.D. Ohio Mar. 3, 2026). *See also Blackstone*, 792 F. Supp. 3d at 899 ("Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text

---

[1] Another example of a category term is "vehicle." That would include gas cars and EVs, even if the latter didn't exist at the time of enactment of the relevant statute. Unlike a broad category term like vehicle, "telephone call" had a specific, limited meaning at the time of enactment—and continues to have that same meaning today, requiring transmission of sound.

messages or SMS messages."); *James*, 2026 WL 879244, at *3 (holding that a text message is not included in the ordinary public meaning of "telephone call" because it does not use a telephone to reproduce sounds at a distance); *Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) ("the statutory text here is clear, and a text message is not a 'telephone call.'"); *1-800-FLOWERS.COM*, 2026 WL 456919, at *4 (granting a motion to dismiss and noting "[t]he statutory text here is clear that only telephone calls are actionable under § 227(c)(5), not text messages."); *Fashion Nova LLC*, 2026 WL 847568, at *2 ("A plain reading of § 227(c)(5) therefore supports Defendant's position that under § 227(c)(5), 'telephone call' does not mean text messages."); *Shein Distrib. Corp.*, 2026 WL 847584, at *5 (same); *Kendo Holdings, Inc.*, 23-cv-00214 (granting a motion for judgment on the pleadings, finding § 227(c)(5)'s "statutory text here is clear, and a text message is not a 'telephone call.'") (quotation omitted). "This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case." *CVS Pharmacy*, 797 F. Supp. 3d at 1270.

Critically, as the *James* court acknowledged, decisions concluding otherwise—that a text message can qualify as a "telephone call"— rest on a flawed statutory interpretation. 2026 WL 879244, at *3. Namely, they "improperly use[] definitions of the ***verb form*** of 'call[,]'" but in "Section 227(c)(5), "call" is used as ***a noun.***" *Id.* at *4 (citing *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631, 636 (S.D.N.Y. 2025) (emphasis added)). Those courts then "compound the error by neglecting to consider the modifying effect on 'call' from 'telephone' as understood in 1991." *James*, 2026 WL 879244, at *4. "[T]he modifying effect of "telephone" . . . . clarifies the understanding of the much broader "call[.]" *Id.*

This reading is further confirmed by the statute's structure and Congress's subsequent amendments. In Section 227(a)(4), for instance, Congress used the phrase "telephone call or

6

message," but in Section 227(c)(5) it used only "telephone call," signaling that it intended to exclude other forms of communication, such as text messages, from the private right of action. *See CVS Pharmacy*, 797 F. Supp. 3d at 1274 ("courts should presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters") (cleaned up). Likewise, Congress amended § 227(e) in 2018 to address spoofing and caller ID manipulation and expressly covered both "a call made using a voice service" and "a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A)–(B). It then defined "text message" in a manner that excludes real-time, two-way voice communications—i.e., a telephone call. *Id.* § 227(e)(8)(C). Had Congress intended to include text messages within Section 227(c)'s private right of action, it could have done so then, just as several state legislatures have expressly amended their statutes to do because they recognized "telephone calls" do not include texts. *See* 2019 N.C. Sess. Laws 188 (H.B. 724) (amending N.C. Gen. Stat. § 75-101(9) to define "telephone solicitation" as a "voice *or text* communication") (emphasis added); Fla. Stat. § 501.059(1)(j) (2023) (amending "telephonic sales call" to include calls and texts); Tex. Bus. & Com. Code § 302.001 (as amended in 2025) (same).

The statute's surrounding provisions reinforce the same conclusion. Congress did not use one catchall term throughout § 227; it chose different terms to reflect different kinds of communications. Section 227(a)(4), for example, defines "telephone solicitation" broadly to include "the initiation of a telephone call *or message*," confirming that Congress knew how to extend the statute beyond calls when it wished to do so. 47 U.S.C. § 227(a)(4) (emphasis added).

Section 227(b) makes the same point through its operative provisions. In § 227(b)(1)(A), Congress prohibited making "any call" using specified technology to a range of numbers, including cellular telephones and paging services. That "any call" provision necessarily reaches

non-voice communications, because pagers at the time received numeric or text messages, not voice calls. By contrast, § 227(b)(1)(B) prohibits "any *telephone call* to any residential *telephone line*" using an artificial or prerecorded voice—a formulation expressly tied to voice communications delivered over residential landlines, which did not receive text messages. 47 U.S.C. § 227(b)(1)(B) (emphasis added). Congress thus used the broader term "any call" when addressing a broader set of communications (including messages), and the narrower term "telephone call" when addressing voice communications.

Congress also regulated fax advertising separately, prohibiting unsolicited advertisements sent to a "telephone facsimile machine," even though those transmissions occur over telephone lines. § 227(b)(1)(C).

This all further bolsters the point that "telephone call" only includes voice calls. And Section 227(c)(5)'s private right of action is limited to receipt of "more than one telephone call." That deliberate choice must be given effect. Because Starling alleges only that he received text messages, not telephone calls, he cannot invoke § 227(c)(5), and his claims fail as a matter of law.

### B.  Any FCC Ruling to the Contrary is Invalid

This conclusion is further compelled by *McLaughlin*, which requires this Court to independently interpret and apply the plain text of the TCPA and not defer to FCC interpretations. 606 U.S. at 155. Before that decision, the FCC informally and cursorily opined that its regulations under Section 227(c) cover texts, though it is unclear whether that was intentional, as that statement was made in passing and based on the FCC's more thorough analysis of the different language in Section 227(b). *See* Targeting & Eliminating Unlawful Text Messages, 89 Fed. Reg. 5098, 5101 (Jan. 26, 2024) (treating texts as "calls" in passing); *Blackstone*, 792 F. Supp. 3d at 901 ("[T]he

8

FCC's interpretation of call to include text messages is a complicated one, and potentially does not even apply to Section 227(c)(5).").

Even assuming the FCC's aside was intentional, its opinion is irrelevant. That's because such an opinion would exceed its statutory authority. Congress granted the FCC authority under Section 227(b)(2) and (c)(2) to adopt implementing *regulations* and grant *exemptions* regarding "telephone solicitations," a term that includes both "telephone call[s]" and "messages," 47 U.S.C. § 227(a)(4). But Congress confined the **private right of action** it created in Section 227(c)(5) only to "telephone calls." What matters for this Motion is not whether Harbor Hill violated the TCPA's implementing regulations (it didn't), but whether Starling has a private cause of action under Section 227(c)(5). He does not.

Nor is it odd that Congress hasn't extended the private right of action under § 227(c)(5) to text messages. *See supra* § III. A. Congress could "reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter." *CVS Pharmacy*, 797 F. Supp. 3d at 1274. And regulating callers "could serve the purpose of protecting consumers even if Congress created no private right of action at all." *Id.* Indeed, Congress frequently grants broader enforcement authority to agencies than the private causes of action it grants to the public. As a parallel example, the FTC's Telemarketing Sales Rule (which is analogous to the TCPA in many ways) sweeps broadly at the regulatory level but authorizes private suits only for a narrow band of conduct—"or practice"—where violations cause "actual damages of $50,000 or more" to the plaintiff. 15 U.S.C. § 6104(a). The CAN-SPAM Act is similar: Congress empowered the FTC, state attorneys general, and other public agencies to enforce the Act, while creating only a "limited private right of action"

for a narrow subset of plaintiffs. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1048 (9th Cir. 2009) (citing 15 U.S.C. § 7706).

In any event, under the Supreme Court's 2025 and 2024 decisions in *McLaughlin* and *Loper Bright*, courts must apply the statute's plain meaning, not defer to contrary FCC interpretations of its own regulations, which use different language than the private cause of action at issue in this case. *See McLaughlin*, 606 U.S. at 155, 168–69; *Loper Bright*, 603 U.S. at 388–89 (2024). Both in 1991 and today, the ordinary meaning of "telephone call" is a voice call, and the FCC cannot rewrite the TCPA to say otherwise.

For decades, lower courts often erroneously deferred to interpretations by agencies like the FCC, even when they were counterintuitive and changed from administration to administration. Most courts followed the FCC's expansive view of "autodialer," for example. That ended when, as noted above, the Supreme Court unanimously reversed that definition, holding it "must interpret what Congress wrote," and "outdated" as "perhaps the TCPA itself[] may be, that is no justification for eschewing the best reading." *Facebook*, 592 U.S. at 397, 409.

The few circuit court decisions on direct APA challenges to the FCC's TCPA interpretations—which was generally the only way to challenge an FCC interpretation before *McLaughlin*—are in accord. There, the circuit courts reversed far more thoughtful FCC opinions as contrary to the plain text of the TCPA. *See, e.g.*, *Ins. Mktg. Coal. v. FCC*, 127 F.4th 303, 315 (11th Cir. 2025) ("We thus reject the FCC's one-to-one consent restriction" as inconsistent with the statutory definition of "prior express consent"); *ACA Int'l v. FCC*, 885 F.3d 687, 695 (D.C. Cir. 2018) ("[W]e set aside the Commission's explanation of which devices qualify as an ATDS, as well as its understanding of when a caller violates the Act by calling a wireless number previously held by a consenting party but reassigned to a person who has not given consent.").

10

Now, through *McLaughlin*, the Supreme Court has confirmed that this Court must conduct that same analysis when raised defensively in litigation, a task formerly reserved for direct APA challenges. *McLaughlin*, 606 U.S. at 157–59 ("[T]he default rule is that district courts in enforcement proceedings may conclude that an agency's interpretation of a statute is incorrect"). That is what the Fifth Circuit just recently did, when it made short order of the FCC's interpretation of the TCPA's phrase "prior express consent." *Bradford v. Sovereign Pest Control of TX, Inc.*, 2026 WL 520620, at *3 (5th Cir. Feb. 25, 2026). In just three pages, the Fifth Circuit rejected the FCC interpretation of that term that has prevailed for the last 14 years, stating plainly that the TCPA means what it says: if a consumer has given "express consent" to be contacted, there is no TCPA claim. *Id*. The consent does not have to be in writing or contain magic language, as the FCC had maintained for one-and-a-half decades. *Id.* at *2. Post *McLaughlin* and *Loper Bright*, it is that simple. *Id.* at *2–3.

Here, deferring to the FCC's "interpretation" and expanding Section 227(c)(5) to create liability for texts would go even further than the FCC's interpretation of "express consent." It would enlarge the private cause of action Congress created by replacing "telephone call[s]" with a broader category of communications—thus "reading into the TCPA something that is not there[.]" *Blackstone*, 792 F. Supp. 3d at 901. *McLaughlin* and *Loper Bright* forbid that result. *See id.*; *see also CVS Pharmacy,* 797 F. Supp. 3d at 1274 ("[T]he court's role is not to look beyond clear language to ascertain Congress's purpose."); *Stockdale*, 2026 WL 591842, at *2 (explaining that, after *McLaughlin* and *Loper Bright*, the district court must "independently—and without any special deference to an agency interpretation—determine the statute's meaning"). Whatever policy arguments might favor extending § 227(c)(5) to text messages, "it is for Congress to correct—not

11

the courts." *Stockdale*, 2026 WL 591842, at \*4. Section 227(c)(5) provides a private cause of action for "telephone call[s]," not text messages.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Harbor Hill's motion to dismiss and dismiss the Complaint with prejudice.

DATED: April 17, 2026                    Respectfully submitted,

*/s/ Leo O'Toole*
Leo O'Toole
WATSTEIN TEREPKA, LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
(404) 779-5190
lotoole@wtlaw.com

*Counsel for Defendant*

## CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(c)

I hereby certify that this memorandum of law complies with Local Civil Rule 7.1(c) because it contains 3,642 words, excluding the caption, any index, table of contents, table of authorities, signature blocks, and any required certificates. In preparing this certificate, I relied on the word-count function of the word-processing system used to prepare this memorandum of law.

By: */s/ Leo O'Toole*
Leo O'Toole

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 17, 2026, I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send notice of the electronic filing to all counsel of record.

By: */s/ Leo O'Toole*
Leo O'Toole