# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **R'KES STARLING**, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>**HARBOR HILL CAPITAL GROUP LLC**,<br><br>    Defendant. | Case No.: 1:26-cv-00001 |

**DEFENDANT'S PROPOSED REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

**Table of Contents**

I.    INTRODUCTION ....................................................................................................1

II.   ARGUMENT ........................................................................................................2

      A.    Section 227(c)(5)'s Text Forecloses Plaintiff's Claims
            Because Text Messages Are Not "Telephone Calls." ...........................................2

            1.    The Phrase "Telephone Call" in Section 227(c)(5)
                  Meant a Voice Call in 1991, so Plaintiff Has No Private
                  Right of Action to Assert Claims Concerning
                  His Alleged Text Messages. .........................................................................2

            2.    There is No Supreme Court or Second Circuit
                  Decision Construing § 227(c)(5)'s "Telephone Call" Language. ...............3

            3.    Plaintiff's District Court Authorities Engage in
                  Apples-To-Oranges Comparisons of Different
                  Terms from Different Parts of the TCPA and
                  Disregard the Differences Between the Verb
                  "Call" and the Noun Phrase "Telephone Call." ...........................................4

            4.    Plaintiff's "New Applications" Cases Do Not Permit
                  Courts to Change the Defining Feature of "Telephone Call." .....................7

      B.    The TCPA's Structure Confirms That "Telephone Call"
            Means Voice Call, Not Text Message. ..................................................................8

      C.    The TCPA's Treatment of Fax Communications
            Proves Harbor Hill's Point .................................................................................11

      D.    FCC Commentary and the TCPA's Purpose Cannot
            Expand a Private Cause of Action Congress Did Not Enact................................12

III.  CONCLUSION ...................................................................................................14

## Table of Authorities

**Cases**

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ...................................................................................................14

*Ashland Hosp. Corp. v. Serv. Emps. Int'l Union*
708 F.3d 737 (6th Cir. 2013) .......................................................................................6

*Bank v. Simple Health Plans LLC*,
2019 WL 7878570 (E.D.N.Y. 2019) ............................................................................6

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) .....................................................................................................4

*Chevron, U.S.A, Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984) ...................................................................................................14

*Davis v. CVS Pharmacy*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025) ......................................................1, 3, 12, 13

*Duran v. La Boom Disco, Inc.*,
955 F.3d 279 (2d Cir. 2020) ........................................................................................4

*Esquivel v. Mona Lee, Inc.*,
2025 WL 3275607 (S.D. Cal. Nov. 24, 2025)..............................................................6

*Facebook v. Duguid*,
592 U.S. 395 (2021) ............................................................................................1, 4, 8

*Garcia Pinach v. Bondi*,
147 F.4th 117 (2d Cir. 2025) ......................................................................................13

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009) .....................................................................................9

*Harriel v. Bealls, Inc.*,
2025 WL 2379617 (M.D. Fla. Aug. 15, 2025)............................................................6

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017) .......................................................................................................9

*Howard v. Republican Nat'l Comm.*,
164 F.4th 1119 (9th Cir. 2026).....................................................................................6

*Hulce v. Zipongo Inc.*,
132 F.4th 493 (7th Cir. 2025).......................................................................................6

ii

*In re New Hampshire Elec. Co-op, Inc.*,
  146 B.R. 890 (Bankr. D.N.H. 1992) ...................................................................................11

*Irvin v. Sonic Industries Services, LLC*,
  2026 WL 1098403 (N.D. Ga. Apr. 20, 2026) ................................................................1, 10

*Jackson v. Caribbean Cruise Line*,
  88 F. Supp. 3d 129 (E.D.N.Y. 2015) ...................................................................................6

*James v. Smarter Contact*,
  --- F. Supp. 3d ----, 2026 WL 879244 (M.D. Fla. Mar. 31, 2026) .....................................1, 3, 5

*Jones v. Blackstone Med. Servs.*
  792 F. Supp. 3d 894 (C.D. Ill. 2025) ...................................................................1, 3, 12, 13

*Krady v. Eleven Salon Spa*,
  2017 WL 6541443  (E.D.N.Y. 2017) ...................................................................................6

*La Boom Disco, Inc. v. Duran*,
  141 S. Ct. 2509 (2021) ........................................................................................................4

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369, 400–02 (2024) ..................................................................................1, 12, 13

*McLaughlin Chiropractic Assocs. v. McKesson Corp.*,
  606 U.S. 146 (2025) .................................................................................................... passim

*Melito v. Am. Eagle Outfitters*,
  2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) .....................................................................6

*Melito v. Experian Mktg. Sols., Inc.*,
  923 F.3d 85 (2d Cir. 2019) ...............................................................................................3, 4

*Metten v. Town Sports Int'l, LLC*,
  2019 WL 1299939 (S.D.N.Y. Mar. 21, 2019) .....................................................................6

*Mujahid v. Newity, LLC*,
  2025 WL 3140725 (N.D. Ill. Nov. 10, 2025) .......................................................................6

*Pepper v. GVG Cap. LLC*,
  677 F. Supp. 3d 638 (S.D. Tex. 2023) .................................................................................7

*Rabbitt v. Rohrman Midwest Motors, Inc.*,
  2026 WL 851279 (N.D. Ill. Mar. 27, 2026) ..................................................................11, 13

*Radvansky v. 1-800-FLOWERS.COM*,
  2026 WL 456919 (N.D. Ga. Feb. 17, 2026) .........................................................................1

iii

*Radvansky v. Kendo Holdings*,
  Case No. 23-cv-00214 (N.D. Ga. Feb. 12, 2026) ....................................................1

*Richards v. Fashion Nova*,
  2026 WL 847568 (S.D. Ind. Mar. 26, 2026) ..........................................................1

*Richards v. Shein Distribution Corp.*,
  2026 WL 847584 (S.D. Ind. Mar. 26, 2026) ..........................................................1

*Rotberg v. Jos. A. Bank Clothiers*,
  345 F. Supp. 3d 466 (S.D.N.Y. 2018) ....................................................................6

*Sagar v. Kelly Auto. Grp.*,
  2021 WL 5567408 (D. Mass. Nov. 29, 2021) ........................................................7

*Satterfield v. Simon & Schuster, Inc.*,
  569 F3d 946 (9th Cir. 2009) .............................................................................5, 6

*Sayed v. Naturopathica Holistic Health*,
  2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ........................................................1

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004) ................................................................................................3

*Stockdale v. Skymount Prop. Grp.*,
  2026 WL 591842 (N.D. Ohio Mar. 3, 2026) ..............................................1, 7, 14

*Taha v. Momentive Software, Inc.*,
  2026 WL 974297 (C.D. Cal. Mar. 11, 2026) ..........................................................7

*Warciak v. Subway Restaurants, Inc.*,
  949 F.3d 354 (7th Cir. 2020) ..................................................................................6

*Wilson v. Better Mortg. Corp.*,
  811 F. Supp. 3d 631 (S.D.N.Y. 2025) .................................................................5, 6

*Wilson v. Easy Spirit, LLC*,
  2026 WL 884170 (D. Conn. Mar. 31, 2026) ..........................................................6

*Wilson v. Medvidi*,
  2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) ..........................................................6

*Wilson v. Skopos Fin., LLC*,
  2025 WL 2029274 (D. Or. July 21, 2025) ..............................................................6

*Wisconsin Central, Ltd. v. United States*,
  585 U.S. 274 (2018) ................................................................................................7

**Statutes**

15 U.S.C. § 6104 ...............................................................................................................9

47 C.F.R. § 64.1200..........................................................................................................13

47 U.S.C. § 227 .........................................................................................................passim

**FCC Fegulations**

18 FCC Rcd. 14014 (2003) ...............................................................................................11

18 FCC Rcd. 14115 (2003) ...............................................................................................11

**Other Authorities**

2024 edition of Black's Law Dictionary .............................................................................6

Merriam-Webster's Collegiate 1211 (10th ed. 1993).........................................................3

Random House 1952 (2d ed. 1987).....................................................................................3

## I.    <u>INTRODUCTION</u>

Plaintiff's opposition asks this Court to do what the Supreme Court has repeatedly said courts may not do: update the TCPA to account for later technological developments. In *Facebook v. Duguid*, the Supreme Court unanimously rejected an expansive TCPA reading adopted by many lower courts because, however "outdated" the statute may be, courts must apply the words Congress enacted—not modernize them. And in *Loper Bright* and *McLaughlin*, the Court confirmed that agency interpretations cannot override statutory text. That resolves this motion.

That's because Section 227(c)(5) creates a private cause of action only for a person who receives more than one "telephone call." In 1991, that phrase did not include text messages, and courts cannot rewrite the phrase to "telephone call or text message."

Harbor Hill cited nine post-*McLaughlin* decisions in its opening brief holding exactly that.[1] Since then, the supporting authority has only grown. In *Irvin v. Sonic Industries Services, LLC*, the court rejected the same arguments Plaintiff advances here and held that § 227(c)(5)'s "telephone call" language does not encompass text messages. 2026 WL 1098403 (N.D. Ga. Apr. 20, 2026). And the Seventh Circuit heard argument on this issue last Thursday and noted their skepticism toward Plaintiff's position that text messages are "telephone calls" under Section 227(c)(5). *Steidinger v. Blackstone Medical Services*, No. 25-2398, <u>Argument</u> at 7:40 (Court: "When Congress wanted to incorporate text messages, they knew how to do it."); 16:00 (Court: "a phone call when you're actually on the phone with someone . . . is totally different than a text message you can just ignore.").

---

[1] *Jones v. Blackstone Med. Servs.*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025); *see also Stockdale v. Skymount Prop. Grp.*, 2026 WL 591842, at *2 (N.D. Ohio Mar. 3, 2026) ("[T]his Court joins several others in holding that the term 'telephone call' as used in Section 227(c)(5) of the TCPA does not encompass 'text messages.'"); *Davis v. CVS Pharmacy*, 797 F. Supp. 3d 1270, 1275 (N.D. Fla. 2025) (granting motion to dismiss § 227(c) claims because plaintiff only alleged receiving text messages, and "because text messages are not telephone calls, he has not stated a claim."); *James v. Smarter Contact*, --- F. Supp. 3d ----, 2026 WL 879244 (M.D. Fla. Mar. 31, 2026) (granting motion to dismiss "[b]ecause Section 227(c)(5) does not apply to text messages[.]"); *Sayed v. Naturopathica Holistic Health*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (granting motion to dismiss, finding "the statutory text here is clear, and a text message is not a 'telephone call.'"); *Radvansky v. 1-800-FLOWERS.COM*, 2026 WL 456919, at *4 (N.D. Ga. Feb. 17, 2026) (same); *Richards v. Fashion Nova*, 2026 WL 847568, at *5 (S.D. Ind. Mar. 26, 2026) (same); *Richards v. Shein Distribution Corp.*, 2026 WL 847584, at *5 (S.D. Ind. Mar. 26, 2026) (same); *Radvansky v. Kendo Holdings*, Case No. 23-cv-00214 (N.D. Ga. Feb. 12, 2026) (same).

In his response, Plaintiff never answers the only question that matters: what did "telephone call" mean when Congress enacted § 227(c)(5) in 1991? The text provides a straightforward answer to the question. So Plaintiff tries to avoid that by a series of irrelevant distractions: invoking Supreme Court and Second Circuit cases that never construed § 227(c)(5)'s "telephone call" language; district court cases that substitute the broader "any call" language from a different TCPA section; and "new applications" cases that only apply to category terms like "any communication" or "any vehicle."

The TCPA's structure confirms the same point: Congress used broader language elsewhere in the same statute—the term "any call" paired with broad definitional categories, "telephone call or message," and separate provisions specifically covering fax transmissions—when it wanted to reach non-voice communications. These separate word choices must be given effect.

Plaintiff's fallback theories fare no better. Appeals to FCC commentary, delegation, ratification, and statutory purpose cannot expand a private cause of action Congress limited to "telephone call[s]." Plaintiff's entire opposition depends on replacing Congress's words with broader ones—the exact judicial modernization the Supreme Court said was impermissible.

Once the correct question is asked, the answer is straightforward. A "telephone call" in 1991 meant a voice communication by telephone. A text message is not that. Plaintiff alleges only text messages, so his § 227(c)(5) claims fail.

## II.    ARGUMENT

### A.    Section 227(c)(5)'s Text Forecloses Plaintiff's Claims Because Text Messages Are Not "Telephone Calls."

#### 1.    The Phrase "Telephone Call" in Section 227(c)(5) Meant a Voice Call in 1991, so Plaintiff Has No Private Right of Action to Assert Claims Concerning His Alleged Text Messages.

Defendant's opening motion established that the plain text of Section 227(c)(5) of the TCPA creates a private right of action only for individuals who receive more than one "telephone call." Unlike some other provisions in the TCPA, Section 227(c)(5) does not use the language "text message" or "message." *Compare* 47 U.S.C. § 227(c)(5) *with* 47 U.S.C. § 227(a)(4) ("telephone

2

call or message") & § 227(e)(8)(C) (defining "text message"). "[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 n.9 (2004). "The ordinary public meaning of 'telephone call' in 1991 did not include or embrace a modern text message." *James*, 2026 WL 879244, at *3. Indeed, the contemporaneous definition of "telephone" was confined to instruments that transmitted "**sound or speech**." *Id.* (quoting *Random House* 1952 (2d ed. 1987) and *Merriam-Webster's Collegiate* 1211 (10th ed. 1993)). Read together, those entries yield one answer: "a text message, which does not use a telephone to reproduce sounds at a distance, is not included or embraced in the ordinary public meaning of 'telephone call' from 1991." *Id*. at *3; *Jones*, 792 F. Supp. 3d at 899 ("Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages."). "This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case." *Davis*, 797 F. Supp. 3d at 1273. In his 25-page brief, Plaintiff offers no rebuttal to the inescapable fact that the ordinary, public meaning in 1991 of the term "telephone call" did not include text messages, and his failure to respond to this central issue alone justifies granting Defendant's motion.

> **2.    There is No Supreme Court or Second Circuit Decision Construing § 227(c)(5)'s "Telephone Call" Language.**

Instead, Plaintiff misstates history. But, given the simplicity of the issue, it is unsurprising that no Supreme Court or Circuit Court decision has held what Plaintiff claims: that § 227(c)(5)'s private right of action, limited to a person who receives more than one "telephone call," extends to text messages. None. In fact, Starling's main Second Circuit authority, which only dealt with the § 227**(b)** autodialer provision, recognized exactly what Harbor Hill argues here: "**text messages are not explicitly covered under the TCPA**," and any purported coverage merely rests on the fact that "the FCC has interpreted the Act to cover them" in § 227(b). *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 88 (2d Cir. 2019) (emphasis added).

3

But this deference to the FCC definition is no longer valid after *McLaughlin.* And, like *Melito*, *Duran* dealt with a § 227(b) autodialer claim and did not construe § 227(c)(5) or the meaning of "telephone call." *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 283–84 (2d Cir. 2020). Moreover, *Duran* is no longer good law because the Supreme Court vacated it in connection with the *Facebook* decision when it cautioned against attempting to modernize the TCPA through judicial rewriting. *See La Boom Disco, Inc. v. Duran*, 141 S. Ct. 2509 (2021). So, *Duran* is a cautionary tale to courts in this circuit that compels granting this motion, not denying it.

Starling's citation to Supreme Court authority (Opp. at 9 and 13) is equally unavailing because in those cases the Supreme Court only "assume[d]" that a text message "qualifies as a 'call'" for purposes of the "any call" provision of Section 227(b) "***without considering or resolving that issue.***" *Facebook, Inc. v. Duguid*, 592 U.S. at 400 n.2; *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). In other words, not a single one of these cases cited by Plaintiff even considered the only question at issue in this case: whether the separate and different term "telephone call" in Section 227(c) includes text messages.

### 3. Plaintiff's District Court Authorities Engage in Apples-To-Oranges Comparisons of Different Terms from Different Parts of the TCPA and Disregard the Differences Between the Verb "Call" and the Noun Phrase "Telephone Call."

Plaintiff's district court cases don't help him either. They disregard the clear text of the noun phrase "telephone call" in Section 227(c)(5) and rely instead on a dictionary definition of the verb "call," used in Section 227(b)(1)(A) and not at issue in this case.

Plaintiff's argument blurs the critical distinction between "call" and the narrower statutory phrase "telephone call." A judge might "call" to a law clerk in the next room, but she makes a "telephone call" only by picking up the phone and placing a voice call. That limiting modifier matters because § 227(c)(5) uses "telephone call," not "any call" or "call or message." That distinction is reinforced by § 227(b)(1)(A), where Congress used broader language tied to paging services—technology that could receive non-voice messages—while § 227(c)(5) chose the

4

narrower phrase "telephone call," confirming that Congress knew how to sweep more broadly when it wished to do so.

Section 227(c)(5) gives a private right of action only to a person who has "received more than one *telephone* call" in 12 months. 47 U.S.C. § 227(c)(5) (emphasis added). As *James* explains, Congress used "telephone call" there as a noun, not a verb. *James v. Smarter Contact, Inc.*, 2026 WL 879244, at *3 (M.D. Fla. Mar. 31, 2026). Yet Starling and the authorities he cites rely on the broader verb definition of "call"—"to communicate" or "to get into communication"—to argue that § 227(c)(5) reaches text messages. *Id.*; Opp. 6, 9–10. Although Starling says one dictionary "defines a 'telephone call' as a 'call,'" Opp. 9–10, he cites no authority that supports the assertion. That is unsurprising, as a definition that reduces "telephone call" to "call" fails to give meaning to half the phrase. The question, then, is not what "to call" may mean in the abstract, but what "telephone call" meant when Congress enacted § 227(c)(5).

*Wilson v. Better Mortgage Corp.*, Opp. 14–15, illustrates the very methodological problem *James* identifies. 811 F. Supp. 3d 631 (S.D.N.Y. 2025) (Engelmayer, J.). *Wilson* defined the noun "telephone call" using verb-form dictionary entries—"the act of calling on the telephone," "to get or try to get into communication by telephone," "to deliver (a message) by telephone"—along with *Satterfield*'s definition of the verb "to call." *Id.* at 637. But *Satterfield* did not interpret § 227(c)(5)'s private right of action or the noun phrase "telephone call." Instead, *Satterfield* analyzed the language in § 227(b)(1)(A)'s broader "meaning of the verb 'to call,'" defined using a 2002 dictionary. *Satterfield*, 569 F.3d at 953. As *James* explains that distinction matters: § 227(c)(5) speaks of receiving "telephone call[s]," not making "any call," and the modifier "telephone" must be given its ordinary 1991 meaning—an act of telephoning through an instrument that transmitted or reproduced sound, not a written text message. 2026 WL 879244, at *3–4. Finally, *Better Mortgage* leaned heavily on the FCC's 2003 Order and 2024 final rule interpreting 227(b)(1)(A)— interpretations not at issue in this 227(c) case and that *McLaughlin* now requires this Court to evaluate independently. 606 U.S. at 155; 811 F. Supp. 3d at 641–42.

Starling's other in-Circuit authority, *Wilson v. Easy Spirit, LLC*, 2026 WL 884170 (D. Conn. Mar. 31, 2026) (Opp. 14), inherits each of those errors. Judge Russell likewise relied on the verb-form definition of "call" from a 1990 dictionary, *id.* at *5, and primarily cited *Better Mortgage* itself for support. The two opinions rise and fall together. Starling's older New York district court citations are all § 227(b)(1)(A) decisions that predate *McLaughlin* and assumed coverage based on FCC pronouncements about that section without conducting the ordinary meaning analysis the Supreme Court now requires.[2] And none addressed § 227(c)(5). Nor do Starling's other cases, which almost universally trace back to *Satterfield* and fail to analyze the 1991 ordinary meaning of "telephone call."[3]

Starling's remaining authorities fall into several irrelevant categories: (1) § 227(b)(1)(A) decisions interpreting the broader phrase "any call" that never address § 227(c)(5)'s narrower "telephone call";[4] (2) DNC decisions that didn't involve text messages, or that only considered whether a communication was a "solicitation" or whether a number was "residential";[5] and (3) district-court decisions that pre-date *McLaughlin* or simply defer to the FCC or adopt its

---

[2] *See* Opp. 13–14; *Krady v. Eleven Salon Spa*, 2017 WL 6541443 (E.D.N.Y. 2017); *Bank v. Simple Health Plans LLC*, 2019 WL 7878570 (E.D.N.Y. 2019); *Rotberg v. Jos. A. Bank Clothiers*, 345 F. Supp. 3d 466 (S.D.N.Y. 2018); *Metten v. Town Sports Int'l, LLC*, 2019 WL 1299939 (S.D.N.Y. Mar. 21, 2019); *Jackson v. Caribbean Cruise Line*, 88 F. Supp. 3d 129 (E.D.N.Y. 2015); *Melito v. Am. Eagle Outfitters*, 2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015).

[3] *See*, *e.g.*, *Wilson v. Medvidi*, 2025 WL 2856295, at *2–4 (N.D. Cal. Oct. 7, 2025) (relying on *Satterfield* and a 2024 edition of Black's Law Dictionary); *Mujahid v. Newity, LLC*, 2025 WL 3140725, at *2–3 (N.D. Ill. Nov. 10, 2025) (relying on *Satterfield*'s § 227(b) analysis and a 2002 Webster's dictionary); *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631, 637–41 (S.D.N.Y. 2025) (relying on *Satterfield*, § 227(b) authorities, purpose, and FCC guidance); *Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4–5 (D. Or. July 21, 2025) (relying on *Satterfield*); *Esquivel v. Mona Lee, Inc.*, 2025 WL 3275607, at *2–3 (S.D. Cal. Nov. 24, 2025) (same).

[4] *See*, *e.g.*, *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, at 1123 (9th Cir. 2026); *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020); *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union,* 708 F.3d 737, 740 (6th Cir. 2013).

[5] *See*, *e.g.*, *Hulce v. Zipongo Inc.*, 132 F.4th 493, 497 (7th Cir. 2025) ("The relevant issue for this appeal is Foodsmart's argument that the communications Hulce received fell outside the definition of 'telephone solicitation[.]'"); *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025) (only issue was whether texts to cellphones, rather than residential lines, were covered).

assumptions without independent textual analysis.[6] None of those decisions analyzes § 227(c)(5)'s noun phrase "telephone call" under *McLaughlin's* ordinary-meaning methodology.

### 4. Plaintiff's "New Applications" Cases Do Not Permit Courts to Change the Defining Feature of "Telephone Call."

Starling's "vehicle" analogy (Opp. 1) illustrates the flaw in his reasoning rather than supporting it. As Harbor Hill explained in its motion, "vehicle" is a category term defined by function: anything that transports people or goods. Mot. 5 & n.1. A Cybertruck shares that defining function, so it is a vehicle even though it did not exist when the statute was enacted. So is a flying car, even though they still don't exist. "Telephone call," in contrast, is not a category term. Its definition was fixed at enactment and remains so today. Then and now, it describes a specific type of communication—voice—transmitted by telephone. Expanding "telephone call" to include text messages is not like recognizing a Cybertruck as a vehicle. It is like calling an email a telephone call because it was sent from a smartphone.[7]

That is exactly the distinction *Wisconsin Central* draws. Starling invokes that case for the proposition that old text can find "new applications" as times change. Opp. 2, 17. But *Wisconsin Central* rejected the government's effort to stretch "money remuneration" to reach stock options because stock options did not share the defining feature of the category—they "were not then—and are not now—recognized as mediums of exchange." 585 U.S. at 284. The same exact logic applies here. Text messages do not share the defining feature of a telephone call—the transmission of sound—and so are not "telephone calls," however much technology has changed. Congress

---

[6] *Sagar v. Kelly Auto. Grp.,* 2021 WL 5567408 (D. Mass. Nov. 29, 2021); *Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638 (S.D. Tex. 2023).

[7] Starling's reliance on *Taha v. Momentive Software, Inc.*, 2026 WL 974297 (C.D. Cal. Mar. 11, 2026), which reasoned that the modifier "telephone" adds nothing to "call" because "telephone" already appears in the dictionary definition of "call" (Opp. 21–22), gets the analysis backwards. Under *Taha*'s logic, "written message" does not exclude oral messages because 'writing' already appears in the dictionary definition of message. That's obviously wrong. The question is what "telephone" means. In 1991, it meant "an instrument for reproducing sounds at a distance." *Stockdale*, 2026 WL 591842, at *3. The modifier narrows "call" to voice communications made using that instrument. *Taha*'s suggestion that this reading would exclude voice calls from modern smartphones confuses the instrument with the communication. A voice call from an iPhone is a "telephone call" because the communication transmits sound. A text sent from an iPhone is not. The device is the same; the nature of the communication differs.

7

knew how to use category terms when it wanted to. It used "any call" in § 227(b)(1)(A) in a way that made clear how broad that specific formulation was intended to be by, for example, indicating that it could include communications to a pager, which contemplates written communications. It used "telephone call or message" in § 227(a)(4). Congress could have used one of these, or it could have used other broader terms like "any communication" or "any contact" in § 227(c)(5). But it didn't. It chose "telephone call" instead. That is not a category term awaiting new applications. It is a specific term that had and still has a fixed meaning. *See Facebook*, 592 U.S. at 404–05.

To this point, Starling never addresses *Facebook, Inc. v. Duguid*, the Supreme Court's most recent TCPA interpretation decision. 592 U.S. 395 (2021). That omission is telling. *Facebook* unanimously rejected an expansive reading of the TCPA that numerous lower courts, including courts in this circuit, had adopted to account for modern technology. In reversing the Second Circuit and the decisions of district courts within it, the Supreme Court held that, however "outdated" the statute may be, that is "no justification for eschewing the best reading" of the words Congress enacted. *Id.* at 409; *see also* Mot. 10. Starling asks the Court to make the same errors here: treat § 227(c)(5)'s "telephone call" as if Congress had written "any call," "any communication," "telephone call or message," or "text message." It is hard to imagine a more on-point rejection of that tactic than the Supreme Court's unanimous decision in *Facebook*.

The question before this Court is straightforward: what did "telephone call" in 227(c)—not "call" or "any call" in 227(b)(1)(A)—mean in 1991? The text, the contemporaneous dictionaries that define the full phrase, and every post-*McLaughlin* decision applying the required ordinary-meaning methodology give the same answer. "Telephone call" means a voice call, not a text message. Mot. 4–7. Starling alleges only text messages. His § 227(c)(5) claim therefore fails.

## B. The TCPA's Structure Confirms That "Telephone Call" Means Voice Call, Not Text Message.

Because Starling cannot persuasively address § 227(c)(5)'s actual text, he instead substitutes broader terminology drawn from other TCPA provisions with different scopes. That includes § 227(b)'s phrase "any call" (Opp. 7), § 227(a)(4)'s "telephone call or message" (Opp.

19), and § 227(c)(3)(F)'s authorization for the FCC to regulate entities "making or transmitting a telephone solicitation" (Opp. 11). None of those provisions address the private right of action Congress created for do-not-call claims under § 227(c), which applies solely when a plaintiff receives "more than one telephone call," and which is the only provision at issue here. Mot. 1, 8.

Starling fails to address the established canon that "when Congress uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous." *Naturopathica,* 2025 WL 2997759, at *2; *see also Irvin*, 2026 WL 1098403, at *4 n. 5 (canon against surplusage "counsels against treating 'telephone call' and 'telephone call or message' the same where Congress saw fit to use the two distinct terms"). He instead asks the Court to treat § 227(b)'s "any call" as interchangeable with § 227(c)(5)'s "telephone call" and to invoke a consistent-usage canon even though, by Starling's own admission, that only applies when Congress uses "*identical*" words. Opp. 7 (citing *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017)). The TCPA's damages structure confirms the textual distinction between the distinct sections. § 227(b)(3) imposes mandatory $500-per-violation liability for "any call" made with prohibited technology. § 227(c)(5), by contrast, requires receipt of "more than one telephone call within any 12-month period" before any recovery is available, and authorizes only "up to" $500 per violation. Congress designed two different remedial schemes. Treating "telephone call" in § 227(c)(5) as coextensive with § 227(b)'s "any call" would collapse them and erase the deliberate limitations Congress imposed.

Starling also redirects to § 227(a)(4)'s definition of "telephone solicitation"—which encompasses "a telephone call or message"—to claim that "telephone call" in § 227(c)(5) must likewise include both. Opp. 19–20. But § 227(a)(4) defines the universe of communications the FCC may regulate; it does not define the scope of the private right of action Congress chose to create. Those are different things, and Starling does not dispute that Congress routinely grants agencies broader regulatory authority than the private remedies it makes available to plaintiffs. It did so in the CAN-SPAM Act, *see Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1048 (9th Cir. 2009); in the FTC's Telemarketing Sales Rule, *see* 15 U.S.C. § 6104(a); and in this very statute,

9

where a single call violates the FCC's regulations but a private plaintiff cannot sue until receiving a second one. 47 U.S.C. § 227(c)(5). If anything, § 227(a)(4)'s broader "telephone call or message" phrasing defeats Starling's reading rather than supporting it. If "telephone call" already encompassed written messages, Congress's addition of "or message" would do no work. The canon against surplusage forbids that result: "construing these distinct phrases identically would render superfluous the different terms Congress chose to use." *Irvin*, 2026 WL 1098403, at *4.

Starling's pager example further proves the same point. Opp. 7. Section 227(b)(1)(A) prohibits using specified technology "to make any call" to a list of enumerated telephone services, including "a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). That enumeration effectively defines and broadens the scope of "any call": it necessarily reaches non-voice communications, because pagers in the early 1990s received numeric or text-based messages, not voice calls. Congress used the broadest available phrase—"any call"—and then defined it broadly by specifying that it covers communications to devices that could not receive voice at all.

The very next paragraph of the same subsection does something conspicuously different. § 227(b)(1)**(B)** prohibits "any *telephone* call to any *residential telephone line* using an artificial or prerecorded voice." (emphasis added). There, Congress switched from "*any* call" to "*telephone* call," and it did so in the precise context where the target—a residential landline—could *only* receive voice communications, not text messages. That is not a coincidence. Even in Section 227(b), Congress used "any call" when it intended to sweep in communications to devices that receive text, and "telephone call" when it was addressing voice communications to lines that receive only voice communications.

Section 227(c)(5) uses "telephone call"—the same narrow term Congress chose for voice communications to voice-only lines. It does not use "any call"—the broad term Congress chose when it wanted to reach pagers and other non-voice devices. That deliberate choice must be given effect, and it places § 227(c)(5) squarely on the voice side of the line Congress drew.

10

### C.    The TCPA's Treatment of Fax Communications Proves Harbor Hill's Point

The TCPA's treatment of fax communications further confirms that "telephone call" does not encompass non-voice communications transmitted over telephone lines. In 1991, fax machines operated over the same telephone network and transmitted to the same telephone numbers as voice calls. *See In re New Hampshire Elec. Co-op, Inc.*, 146 B.R. 890, 898 (Bankr. D.N.H. 1992) ("'[F]ax' machines allow persons to transmit correspondence and other documents through the telephone lines."). Yet Congress did not treat fax transmissions as "telephone calls." It regulated them separately in § 227(b)(1)(C), creating a distinct prohibition against sending "an unsolicited advertisement" to "a telephone facsimile machine," with its own scope, exemptions, and remedial structure. Congress later amended that fax-specific regime through the Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, again without treating faxes as "telephone calls."

Critically, Congress enacted the JFPA at a time when text messaging was already mainstream in the United States and after the FCC had already opined in its 2003 Order that "call" includes text messages. 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). Yet rather than extending § 227(c)(5)'s private right of action to text messages, or folding faxes into the existing "telephone call" provisions, Congress created yet another regulatory scheme for a non-voice telephone communication. Congress's decision not to extend § 227(c)(5) to text messages at a time when it was actively amending the TCPA, and was on notice of the FCC's 2003 interpretation, is the opposite of the implicit ratification Starling claims. *Cf. Rabbitt*, 2026 WL 851279 at *3–4 (N.D. Ill.) (relying on Congress's failure to amend § 227(c) as evidence of ratification).

If Starling's reading of "telephone call" was correct—that it encompasses non-voice communications transmitted via telephone, or to a telephone number—then faxes were "telephone calls" all along. That would mean Congress created an entirely separate and conflicting regulatory scheme for fax communications in § 227(b)(1)(C) without realizing they were already covered. And it would mean that a plaintiff who received two unsolicited fax advertisements could sue under both the fax-specific remedy in § 227(b)(3) *and* the do-not-call remedy in § 227(c)(5), with different triggering requirements, different damage standards, and different trebling thresholds. No

11

one has ever argued that, because it makes no sense. Congress regulated faxes separately because faxes are not "telephone calls." Text messages are not either.

Congress does not create duplicative and internally inconsistent private remedies for the same conduct by accident. The only reading that avoids these conflicts is that Congress understood "telephone call" to mean what it says: a voice communication by telephone. Faxes and text messages are not telephone calls. Congress regulated each form of communication through the specific provisions it chose, and this Court should give effect to those choices.

### D. FCC Commentary and the TCPA's Purpose Cannot Expand a Private Cause of Action Congress Did Not Enact

Recognizing the textual difficulty, Starling pivots to four backup theories that distract from the main analysis. First, he asks this Court to defer to the FCC's interpretation that "call" includes texts. Opp. 8. But *McLaughlin* makes clear that "a district court must independently determine for itself whether the agency's interpretation of a statute is correct[;] [d]istrict courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." 606 U.S. at 155 (citing *Loper Bright*, 603 U.S. at 402). Under that framework, the FCC's assumptions about § 227(c)(5) matter only insofar as they reflect the ordinary 1991 meaning of "telephone call." As the post-*McLaughlin* decisions confirm, they do not. Mot. 8–11.

In any event, the FCC never undertook an independent textual analysis of whether § 227(c)(5)'s phrase 'telephone call' encompasses text messages. At most, it informally and cursorily opined that its regulations under Section 227(c) cover texts, and even that statement was made in passing. *See* Mot. 9; *Blackstone*, 792 F. Supp. 3d at 901 ("[T]he FCC's interpretation of call to include text messages is a complicated one, and potentially does not even apply to Section 227(c)(5)."). But "even assuming that the FCC clearly defined 'telephone calls' as that term is used in Section 227(c)(5)" to include text messages, "'appropriate respect' for that conclusion would not require a different outcome" where the ordinary meaning of the statute says otherwise. *CVS Pharmacy,* 797 F. Supp. 3d at 1274 & n.1. *Garcia Pinach v. Bondi* (Opp. 24) does not change

12

the analysis: it addresses stare decisis for the Second Circuit's own prior decision in an immigration case, not deference to pre-*Loper* FCC interpretations, and no Second Circuit decision has ever analyzed whether § 227(c)(5)'s "telephone call" encompasses text messages. 147 F.4th 117 (2d Cir. 2025).

Second, to the extent Starling attempts any express delegation argument under § 227(c)(1)(A) and (E) surviving *Loper Bright* (Opp. 2, 13), he conflates two separate provisions. § 227(c)(1) delegates to the FCC authority to design "regulations" governing the do-not-call list. § 227(c)(5), by contrast, is the private cause of action Congress itself created, with its own scope-defining language: "more than one telephone call." As *Davis* explains: "Congress can (and does) provide private rights of action narrower than its full breadth of regulation. The very provision at issue (§ 227(c)(5)) proves the point. It limits the private right to those who received two or more unwanted calls, even when a single call would violate the TCPA." 797 F. Supp. 3d at 1274. The two-call threshold appears nowhere in the underlying regulations. A single call violates 47 C.F.R. § 64.1200(c)(2)—but a private plaintiff cannot sue under § 227(c)(5) until receiving a second one. Congress drafted the private remedy with deliberate scope-narrowing language baked into the statute. The exclusion of text messages is another such limitation, not an inexplicable gap. As noted above, Congress routinely grants agencies broader regulatory authority than the private actions available to plaintiffs. Mot. 8–9. Courts must enforce that choice, not paper over it.

Third, Starling contends, through Judge Gettleman's *Rabbitt* opinion, that Congress's 2018 amendments to § 227(e) implicitly ratified an FCC view that "call" includes text messages. Opp. 23–24 (citing *Rabbitt*, 2026 WL 851279). *Blackstone* rejected the same move, explaining that plaintiffs there "cobble[d] together the FCC's 2003 Order and several later FCC Orders. . . with 47 C.F.R. § 64.1200(e) in an effort to establish that text messages apply under Section 227(c) of the TCPA," even though the 2003 Order "on its face. . . explicitly references only § 227(b)" and the later orders simply "refer back to the 2003 Order." 792 F. Supp. 3d at 900. The same flaw defeats Starling's argument here. In fact, the 2018 amendments cut the other way: Congress added § 227(e)(8), which expressly distinguishes "a call made using a voice service" from "a text

13

message sent using a text messaging service," 47 U.S.C. § 227(e)(8)(A)–(B), and defined "text message" to exclude "a real-time, two-way voice . . . communication," *id.* § 227(e)(8)(C)(iii). Mot. 6. Congress's decision to leave § 227(c)(5) untouched, while expressly distinguishing between a "call" and a "text message" in other provisions, undercuts, rather than supports, ratification.[8]

Finally, Starling invokes the TCPA's privacy-protection purpose to argue that excluding texts would defeat congressional intent. Opp. 1, 3, 12. But that turns the rule on its head: "[P]rivate rights of action . . . must be created by Congress;" "courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286–87. "Where, as here, the language of the statute is clear, the Court's analysis stops…. it is for Congress—not this Court—to fill those gaps in the wake of *Chevron*'s reversal." *Stockdale*, 2026 WL 591842, at *4.

### III.   CONCLUSION

For these reasons, the Court should grant Harbor Hill's motion to dismiss.

DATED: May 27, 2026                          Respectfully submitted,

> */s/ Leo O'Toole*
> Leo O'Toole
> WATSTEIN TEREPKA, LLP
> 75 14th Street NE, Suite 2600
> Atlanta, Georgia 30309
> (404) 779-5190
> lotoole@wtlaw.com
>
> *Counsel for Defendant*

---

[8] Starling's related argument that the 2018 amendments' savings clause—providing that nothing in subsection (e) "shall be construed to modify, limit, or otherwise affect any rule or order adopted by the [FCC] in connection with" the TCPA (Opp. 24)—ratified the FCC's view that "call" includes texts is equally unavailing. The savings clause preserved existing FCC *rules and orders* from disruption by the new spoofing provisions. It says nothing about the meaning of "telephone call" in § 227(c)(5), and a general savings clause cannot sub silentio expand a private cause of action Congress chose not to amend.

## LOCAL CIVIL RULE 7.1(c) CERTIFICATE

This proposed memorandum of law contains 5,414 words, excluding the caption, any index, table of contents, table of authorities, signature blocks, and any required certificates and therefore exceeds the presumptive word limit set out in Local Civil Rule 7.1(c). Defendant seeks leave in the attached letter to file this brief and to exceed Local Rule 7.1(c)'s word limit.

By: */s/ Leo O'Toole*
Leo O'Toole

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 27, 2026, I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send notice of the electronic filing to all counsel of record.

By: */s/ Leo O'Toole*
Leo O'Toole